## Travis Keys v. The State.

### No. 774. Decided November 9, 1910.

**1.—Robbery—Continuance—Affidavit—Motion for New Trial.**

Where, upon trial of robbery, the defendant's application for continuance showed proper diligence, and the testimony was material and supported the defendant's testimony that he had won the alleged stolen money at cards, the same should have been granted; especially as the witness' affidavit could not be secured to the motion for new trial.

**2.—Same—Force—What Constitutes Robbery.**

Where, upon trial of robbery, the State's evidence showed that the defendant ordered the prosecutor to hold up his hands, and through fear of his life he held up his hands and defendant went through his pockets, this would be such an assault and the use of such force which would bring the defendant clearly within the rule defining robbery. Following Tones v. State, 48 Texas Crim. Rep., 363, and other cases.

**3.—Same—Charge of Court—Bailee—Conversion.**

Upon trial of robbery there was no error in the court's failure to charge upon the subject of theft either by bailee or by conversion, under the state of proof.

Appeal from the District Court of Wichita. Tried below before the Hon. A. H. Carrigan.

Appeal from a conviction of robbery; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Orville Bullington* and *C. C. Huff* and *Edgar Scurry* and *T. R. Boone,* for appellant.—On the question of refusing continuance: Hollis v. State, 9 Texas Crim. App., 643; McAdams v. State, 24 Texas Crim. App., 86, 5 S. W. Rep., 826; Duffey v. State, 67 S. W. Rep., 418; Gathright v. State, 85 S. W. Rep., 1076.

On the question of the court's failure to charge on bailment: Townsend v. State, 10 Texas Crim. App., 499.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, Judge.—This is an appeal from a conviction for robbery with a penalty of ten years confinement in the penitentiary.

When the case was called for trial the State announced ready and the defendant presented an application for a continuance. The defendant was put upon trial on the 21st day of January, 1910. This application for a continuance was for the want of the testimony of one John Tucker, whom the application alleged to be temporarily in Oklahoma, for Leonard Craddock, who it was alleged resided in Baylor County, and for Foster Hudson, who resided in Montague County, said motion alleging that an indictment had been returned against defendant and Alvin Johnson on the 10th day of December, 1909, charging them with robbery by making an assault upon one

Frank Morgan; that on the 13th day of December, 1909, he filed an application for a subpoena for the nonresident witnesses; that process issued thereon and that the process to Baylor County for the witness Craddock was returned on the 24th day of December, showing that it had been executed by summoning the witness Leonard Craddock; that there has been no return of the process that was issued to Montague and Clay Counties for the witnesses Hudson and Tucker; that he expected to prove by these witnesses that the assaulted party, Frank Morgan, and Lang Anderson, witnesses for the State in this case, engaged in a game of cards with the defendant and Alvin Johnson on the night of the alleged robbery, and that the defendant obtained the money that was taken from Frank Morgan in the game of cards; that Morgan accused him of cheating at said game of cards, and declared when the defendant and Alvin Johnson left that he intended to pursue them and recover the money. In the trial of the case defendant took the stand and testified that on the night in question he and his codefendant, Alvin Johnson, went with the prosecuting witnesses, Morgan and Anderson, to a house that had been used and occupied as a sporting house, the woman occupying said house at the time being in jail, and no one lived there, and that they went into said house and engaged in a game of cards and that he won from the said Morgan $65 or $70; that Morgan accused him of cheating and went out of the house; that they all got up and left, and that when he left said house Morgan said that he intended to have the money back; that he had cheated him in the game, and that the said Morgan and Anderson followed him away from the house, assaulted him and took the money away from him, and that the witness Craddock was in said house and witnessed the game. Morgan testified that he did not engage in a game of cards with the defendant, but that he, Anderson, and Johnson—who was one of the parties indicted—after night went up close to the flouring mill to a show, and that while they were returning to town they were overtaken by this defendant, who inquired of them who they were and where they were going, and when they told him they were going off on the two o'clock train he told them that they were going to beat their way on the train and to come and go with him to the city hall; that they started on, Morgan and Anderson in front, and that after going a short distance Johnson engaged the defendant in conversation, and while they were standing and talking the defendant put his hand in his pocket and told Morgan and Anderson to come to him and ordered them to throw up their hands, which they did, when the defendant went through the witness Morgan's pockets and took therefrom the sum of $70 or $75; that in the same place where he had this paper money he also had a $20 gold piece; that the defendant did not take that, but after taking the paper money handed the pocketbook back; that he also searched Anderson and that Anderson had six or seven dollars in silver in his pocket, but defendant did

not take it; that after defendant got the money he started off; that Johnson there left them, not going in the direction the defendant went. The prosecuting witness then stated that he became satisfied that this party was not an officer and that he and Anderson took out after him and caught him and made him give up the money, and that while they were squabbling over this several parties came up. If the testimony of Morgan and Anderson is to be believed, we are of opinion that it established a case of robbery and that there is no testimony in the case that would make it a lesser or different offense other than robbery. If he ordered the parties to hold up their hands, and through fear of life they held up their hands and he went through the pockets of the parties, this would be such an assault and the use of force as would bring defendant clearly within the rule as announced in the case of Tones v. State, 48 Texas Crim. Rep., 363. See also the case of Leonard v. State, 56 Texas Crim. Rep., 307, where a distinction between theft and robbery is clearly drawn. The application for continuance shows proper diligence. The testimony was material and the only question to be considered is, is it probably true and would it likely change the result of the trial? That it did support defendant's testimony on the trial of the case there is no question. The court charged the jury in the case that if the defendant won the money in a game of cards they would acquit. This testimony was of great importance to the defendant and was upon a vital issue in the trial of the case. There were some things connected with this robbery that was a little peculiar and out of the ordinary. The fact that the defendant did not take all the money of the prosecuting witness when he robbed him; the fact that after he made Anderson give up his pocketbook he did not take anything out of it, though it had six or seven dollars in money in it, and in view of the peculiar circumstances connected with the case, we are of opinion that the application for continuance ought to have been granted. We do not say that it would have had any effect on the jury had the witness been present and testified, but still it being the first application for continuance, the issue being made in the case, it was important that the defendant should have the benefit of the testimony to support that contention. The defendant ought to have been permitted to have had his witnesses present to testify to these facts, and though the jury after hearing the witness and from his manner may not believe him, yet that is a matter that this court can not consider. If the testimony was vital, if it was material, the defendant would be entitled to it and in the shape of the record we can not say that such testimony is not probably true, or that it would not probably have changed the result of the case. Juries are sometimes largely controlled by the manner in which testimony is delivered upon the witness stand, and, looking into the face of the witness, it might be that the jury would believe this witness. However, the defendant was entitled to the testimony and having shown

proper diligence, we feel that we would not be authorized to deprive the defendant of the benefit of this testimony on so vital an issue. Had the witness resided in the county and sufficient time had elapsed between the trial and the termination of the court, it would have given strength to the application had it been supported by the affidavit of the witness that he would have testified to such facts, and in some cases this court has held that such fact. will be taken into consideration in passing upon an application for a continuance. But here the witness lived in another and distant county, the defendant was confined in jail and the opportunity to secure the affidavit would not be as easy as if the witness had lived in the county.

It becomes unnecessary to decide the other questions in the case. We do not think it was necessary for the court, under the state of proof as made by the State's witnesses, to have charged upon the subject of theft either by bailee or by conversion. If the State's witnesses are to be believed it was a case of robbery.

For the error of the court in not granting a continuance the judgment is reversed and the cause is remanded.

*Reversed and remanded.*